UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

CRIMINAL COMPLAINT
M.J. NO. 1:16-cr-10258-ADB

UNITED STATES            )
                         )
v.                       )
                         )
FRANK P. SALEMME, and    )
PAUL M. WEADICK,         )

## JOINT MEMORANDUM OF THE DEFENDANTS
## IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE
## RELATIVE TO STATEMENTS OF THE DEFENDANT SALEMME

## INTRODUCTION

This case involves the alleged 1993 murder of Steven A. DiSarro, twenty-four (24) plus years ago. On September 1, 2016, Mr. Weadick was charged in a one count indictment of murdering a witness in violation of 18 U.S.C. § 1512(a)(1)(C). His case is joined with a parallel indictment of Salemme. The Defendants' primary accuser, and only alleged percipient witness to the killing, is Stephen Flemmi, a notorious crime figure in Boston's history. It is alleged by Mr. Flemmi that Mr. Weadick was present and held the decedent's legs while he was strangled to death by Mr. Salemme's son, since deceased, Francis Salemme, Jr.

The Government's Motion In Limine Relative to Statements of Defendant Salemme (Document 150) should be denied because the government's use of the reported statements are specifically limited by their 1999 Proffer Agreement with Mr. Salemme (Document 150-1; USAO_00002652). Furthermore, the government's attempt to introduce the statements highlight the need for the charges against Mr. Weadick to be severed from the

case against Mr. Salemme, as allowing the cases to be tried together would violate Mr. Weadick's confrontation clause rights secured by the 6th Amendment to the U.S. Constitution.[1] The government's attempt to introduce the statements also highlights the substantial risk that spillover evidence against Mr. Salemme will taint Mr. Weadick to such a degree that his right to a fair trial will be unfairly jeopardized. *See United States v. Soto-Beniquez*, 356 F.3d 1, 29 (1st Cir. 2003) (citing *United States v. Baltas*, 236 F.3d 27, 33 (1st Cir.2001)).

## **ARGUMENT**

I. *The Proffer Agreement Barres Use of the Statements in a Subsequent Prosecution Against Mr. Salemme and the Exception Does Not Apply Because the Current Prosecution Against Him is not "Based" on the Falsity of the Statement.*

The statements should not be admitted into evidence because the terms and condition of the 1999 Proffer Agreement (Document 150-1; USAO_00002652) prohibit its usage against the Defendant Salemme, and although two (2) limited exceptions are carved out in Paragraph 1, neither is applicable in the case at hand. The First Circuit has held that "Informal immunity agreements, such as proffer agreements, 'are shaped . . . by the language of the contract conferring immunity.'" *United States v. Houston*, 857 F.3d 427, 436 (1st Cir. 2017) (citing *United States v. Melvin*, 730 F.3d 29, 37 (1st Cir. 2013) (quoting *United States v. Hogan*, 862 F.2d 386, 388 (1st Cir. 1988)). In evaluating the parameters of a proffer agreement, the District Court should look to the text of the agreement, itself, as the meaning of the proffer agreement presents a question of law. *United States v. Melvin*, 730 F.3d at 37. In performing such interpretative task, the court should be guided by general contract-law principles. *See United States v. McLaughlin,* 957

---

[1] The Defendant Weadick, pursuant to Fed.R.Crim.P. 14, has filed a motion to sever together with supporting memorandum.

F.2d 12, 16 (1st Cir. 1992). As recognized in *Melvin*, proffer agreements are sui generis, and the contract-law principles that courts use in construing them are imbued with a heightened concern that the defendant's consent to appear at a proffer session "should not become a lever that can be used to uproot his right to fundamental fairness under the Due Process Clause." *Melvin*, 730 F.3d at 39. *See also, United States v. $87,118.00 in U.S. Currency,* 95 F.3d 511, 517 (7th Cir. 1996). "Unlike the normal commercial contract," it is "due process [that] requires that the government adhere to the terms of any . . . immunity agreement it makes." *United States v. Pelletier*, 898 F.2d 297, 302 (2d Cir. 1990). Whenever possible, contracts should be construed to give effect to every word, clause, and phrase." *Melvin*, 730 F.3d at 37; *Crowe v. Bolduc*, 365 F.3d 86, 97 (1st Cir. 2004). Furthermore, under the doctrine of contra proferentem, an ambiguous term in a contract normally should be construed against the interest of the drafter, and this praxis applies to proffer agreements. *Melvin*, 730 F.3d at 37 (citing *United States v. Hill*, 643 F.3d 807, 875-76 (11th Cir. 2011)).

In the case at hand, Paragraph 1 of the 1999 Proffer Agreement (Document 150-1; USAO_00002652), authored on government letterhead, reads, in toto, as follows:

> No statements made or other information provided by Salemme will be used directly against him, except for purposes of cross-examination and/or impeachment should he offer in any proceedings statements or information different from statements made or information provided by him during the proffer, <u>or in a prosecution of Mr. Salemme based on false statements made or false information provided during the proffer.</u>

[emphasis added]. Under a plain language interpretation, the first clause Paragraph 1 unambiguously indicates that "no statements made" by Salemme will be used against him. There are then only two (2) exceptions delineated, i.e., (1) except for purposes of cross examination/impeachment in proceedings where Salemme offers different statements/information provided by him during the proffer; or (2) except in "a prosecution

3

in a prosecution of Mr. Salemme <u>based</u> on false statements made or false information provided during the proffer."[emphasis added].[2] The case at hand is *not* a prosecution "based on a false statement or false information provided…" – as was *U.S. v. Salemme, et al*. Crim No. 94-10287MLW, where Mr. Salemme was prosecuted for providing false information and ultimately plead guilty on April 14, 2008 – but, to the contrary, the pending indictment is "based" on an alleged murder of a witness in violation of 18 U.S.C. § 1512(a)(1)(C). Although the government makes the blanket argument that it can use the reported false statement in the pending case for an inference as to Mr. Salemme's state of mind because of its reported falsity, the plain language of the 1999 Proffer Agreement indicates to the contrary.

   II.   *The Government's Attempt to Introduce the Statements Highlights the Need for Mr. Weadick's Case to be Severed.*

The government's attempt to introduce Mr. Salemme's reported statements highlights one of the reasons why the cases should be severed because of degree of evidence against Mr. Salemme, a much publicized, notorious crime figure in Massachusetts, will unfairly spillover into the case against Mr. Weadick, which would not occur if the cases were tried separately. In joint trials, the risk of "'spillover' may arise where evidence that is not admissible or should not be considered against one defendant on his or her own is admitted against a co-defendant." *United States v. Cancel-Lorenzana*, 28 F. Supp. 3d 138, 140 (D.P.R. 2014) (Besosa, J.). When the risk of spillover evidence is so pervasive "that a miscarriage of justice looms," severance is appropriate. *Id*. (quoting *United States v. Pierro*, 32 F.3d 611, 615 (1st Cir. 1994)). Severance is warranted when spillover evidence results in pervasive prejudice. *See United States v. Sampol*, 636 F.2d 621, 204 U.S. App. D.C. 349

---

[2] The word "based," in addition to be a word of common parlance, is clearly defined by Webster's Dictionary (2018): https://www.merriam-webster.com/dictionary/base.

(1st Cir. 1980) (holding that district court erred in failing to sever a three-defendant trial where two defendants, but not the third, were charged with the bombing murder of two victims because "[i]n cases when there is a gross disparity in the quantity and venality of the testimony against the respective joint defendants it is fair to inquire whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and limited admissibility."); *United States v. Mardian*, 546 F.2d 973, 178 U.S. App. D.C. 207 (D.C. Cir. 1976) (overturning the conviction of a defendant who had been tried jointly with three principal members of the Watergate conspiracy, all of whom played much more substantial roles in the crime over longer periods of time); *United States v. Kelly,* 349 F.2d 720 (2nd Cir. 1965) (holding that the district court erred in failing to sever the trial of three co-defendants, two of which "must have stamped in the eyes of the jurors as unscrupulous swindlers of the first rank.").

The Government's attempt to introduce the statements also implicates and violates the Defendant Weadick's confrontation clause rights secured under the 6th Amendment to the United States Construction. *See Bruton v. United States,* 391 U.S. 123 (1968). *See also, Crawford v. Washington*, 541U.S. 36 (2004) (and its progeny). The government is asserting that "the false statement [Salemme] made concerning Bianco's possible complicity in the disappearance of DiSarro is a false declaration, relevant to show his guilty state of mind." (Document 150, p. 11). Although the government is employing a selective interpretation of the reported statements and Mr. Salemme's state of mind, the reality is that Mr. Weadick will likely be deprived of any opportunity to cross-examine Mr. Salemme and confront him regarding what was said, the true meaning of the reported statements, and his rationale for reportedly making them.

# CONCLUSION

For the foregoing reasons, the Government's Motion in Limine Relative to Statements of the Defendant Salemme should be denied.

Respectfully submitted,
DEFENDANT PAUL WEADICK
By his attorney,

*/s/William D. Crowe*
_____
William D. Crowe, BBO No. 106960
Adam A. Rowe, BBO No. 634885
**CROWE & DUNN**
77 Franklin Street, 3rd Floor
Boston, Massachusetts 02110
(617) 367-6767

*/s/ Mark Shea*
_____
Mark Shea, BBO No. 558319
Shea & LaRocque, LLP
929 Massachusetts Avenue
Cambridge, Masaschusetts 02139
(617) 577-8722

DEFENDANT FRANCIS P. SALEMME
By his attorneys,

*/s/ Elliot M. Weinstein*
_____
Elliot M. Weinstein, BBO No. 520400
83 Atlantic Avenue
Boston, Massachusetts 02110
(617) 367-9334

*/s/ Steven Boozang*
_____
Steven Boozang, BBO #659216
450 Washington Street
Dedham, Massachusetts 02026
(781) 251-9991

Dated: April 9, 2018

**CERTIFICATE OF SERVICE**

       I, William D. Crowe, hereby certify that I have this 9th day of April, 2018, served a true copy of the forgoing document, entitled JOINT MEMORANDUM OF THE DEFENDANTS IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE RELATIVE TO STATEMENTS OF THE DEFENDANT SALEMME, upon all counsel of record via the ECF system and that I am not aware of any counsel of record who do not have access thereto.

                                                */s/William D. Crowe*

                                                William D. Crowe, BBO No. 106960