UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| | * | |
| v. | * | |
| | * | |
| FRANCIS P. SALEMME and PAUL M. WEADICK, | * | Criminal Action No. 16-cr-10258-ADB |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER ON MOTION FOR RECONSIDERATION**

BURROUGHS, D.J.

**I.      BACKGROUND**

At the final pretrial conference held on April 11, 2018, the Court heard argument and addressed several motions that were pending before the Court, including the Government's motion for the imposition of limited measures to conceal the personal identifying information of two inspectors assigned to the U.S. Marshals Service's Witness Security Program. See [ECF No. 148]. The inspectors are expected to testify in this case that Defendant Salemme was a participant in the Witness Security Program and allegedly fled when events occurred that may have alerted him to the possibility of his arrest. The Government originally requested the following measures to conceal the inspectors' personal identifying information:

> When the Inspector testifies, the public may be present in the courtroom; however, no devices capable of taking photographs or video will be permitted in the courtroom. In addition, no materials that can be used to draw sketches will be permitted in the courtroom. Finally, a screen will be installed such that the defendants and jury can see the Inspector when he or she testifies but the public cannot.

Id. at 2. Moreover, the Government asked that each inspector be permitted to testify using a pseudonym and without identifying the geographic area of his office, and that the Court limit

Defendants from asking questions about each inspector's personal identifying information. Id.

On April 25, 2018, in an order reflecting its rulings from the bench at the final pretrial conference, the Court explained that the Government has an interest in protecting the safety of the inspectors and the participants of the Witness Security Program, and that the public disclosure of personal identifying information about the inspectors or the program's witnesses, which are not material to this case, could jeopardize their privacy and safety. [ECF No. 192 at 2–3]. The Government's proposal, however, was broader and more cumbersome than necessary to protect the Government's interests. Id. The Court denied the request for the installation of a screen and held that the public could be present in the courtroom during the inspectors' testimony, but that no devices or materials for photography, video, or sketching would be permitted. Id. Moreover, the inspectors would be allowed to testify using a pseudonym and to not disclose their personal identifying information or their professional geographic location. Id.

The Court noted in its order that the Government could request reconsideration of the disposition of the motion after conferring with the Marshals Service. On May 18, 2018, the Marshals Service filed a motion for reconsideration. [ECF No. 230]. In that motion, the Marshals Service did not press the initial proposal for the installation of a screen but instead requested that the public be seated in a parallel courtroom where the audio of the inspectors' testimony would be broadcast live. Id. at 4. On May 23, 2018, the Court held a hearing on the motion for reconsideration. During that hearing, at the proposal of Defendant Salemme, the Marshals Service agreed that in addition to the limitations set forth in the Court's April 25 order, the inspectors would testify in open court using makeup to disguise their identities. [ECF No. 237]. Mr. Weadick's counsel also did not object to codefendant counsel's proposal, although he had previously objected to the other proposals about how to protect the inspectors' identities. While

the parties and the Marshals Service have agreed to this resolution, the Court nonetheless writes in recognition of the public interest at stake.

## II. DISCUSSION

While acknowledging both the public's right under the First Amendment and the accused's right under the Sixth Amendment to a public trial, the Supreme Court "has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." Waller v. Georgia, 467 U.S. 39, 45 (1984); see Weaver v. Massachusetts, 137 S. Ct. 1899, 1909 (2017) ("So although the public-trial right is structural, it is subject to exceptions."). Waller provided the following standard for courts to apply before excluding the public from any stage of a criminal trial:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

Presley v. Georgia, 558 U.S. 209, 213−14 (2010) (quoting Waller, 467 U.S. at 48). Unlike Waller, this case does not involve a complete courtroom closure, which "has a far more severe impact on the rights of the accused than a partial closure." Bucci v. United States, 662 F.3d 18, 30–31 (1st Cir. 2011). Accordingly, "[i]n partial closure cases . . . [the First Circuit] and several . . . sister circuits have held that a 'substantial' interest, rather than a 'compelling' one, will justify partial closure." Id. at 23 (quoting United States v. DeLuca, 137 F.3d 24, 32−35 (1st Cir. 1998)).

Here, the Government has an overriding interest in protecting the privacy and safety of both witnesses and agents involved in the Witness Security Program and also that that interest is likely to be prejudiced by the public disclosure of the inspectors' personal identifying

3

information in this case. See United States v. Petters, 663 F.3d 375, 383 (8th Cir. 2011) (prohibition on use of Witness Security Program participant's name during pretrial proceeding was justified by substantial interest in "the integrity of the [Witness Security Program] and the safety of [the witness] and his family"). Other courts have similarly found that protecting the identity of officers in the field, such as officers working undercover, presents an overriding or substantial interest. See Rodriguez v. Miller, 537 F.3d 102, 110 (2d Cir. 2008) ("It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officers." (citing Brown v. Artuz, 283 F.3d 492, 501–02 (2d Cir. 2002))); Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) ("The gravity of the state interest in protecting the secrecy of the officer's identity from casual observers and the likelihood that this interest will be prejudiced by the officer's testifying in open court are both sufficiently substantial to justify the limited closure of the courtroom during the officer's testimony."); Sevencan v. Herbert, 342 F.3d 69, 76 (2d Cir. 2003) (in habeas context, finding that "safety of the undercover officer" was an overriding interest likely to be prejudiced by a public hearing). As described by the Government, because the inspectors regularly meet with witnesses in need of protection, it is critical that they remain anonymous for the safety of themselves, protected witnesses, and the integrity of the Witness Security Program itself. [ECF No. 230 at 2–4]. Publicly releasing their identity and location could inadvertently lead to the exposure of witnesses involved with the program. Here, in particular, the media have reported on several occasions (1) the city where Mr. Salemme was reportedly living as a participant in the Witness Security Program, (2) the state where Mr. Salemme was arrested, and (3) that Witness Security Program inspectors will testify in this case. Id. Assuming the reported information is correct and that one or both of the testifying inspectors

perhaps frequent those areas, revealing their identities or personal information could expose them to a heightened risk of being exposed in the course of doing their jobs.

Second, the measures ordered by the Court are no broader than necessary to protect the Government's interest. The partial closure will last only for the testimony of the two witnesses, neither of whom is critical to the prosecution or the defense's case. The courtroom will remain open to the public throughout the inspectors' testimony. Although the inspectors' disguises should mask their true identities, the prohibition of sketching and recording devices during their testimony will further protect them from being identified, and will not impose an additional burden on the public trial right, given that the public may contemporaneously view the testimony in the courtroom and review the official transcript thereafter. See, e.g., United States v. Mohamud, No. 10-cr-00475-KI (D. Ore. Dec. 19, 2012), ECF Nos. 233, 341 (prohibiting all non-official recording devices in courtroom during testimony of undercover FBI agents and allowing agents to testify wearing light disguises); United States v. Hendricks, No. 16-cr-00265-JRA (N.D. Ohio Feb. 28, 2018), ECF No. 84 (prohibiting public disclosure of any audio or video recording of voice or visual image of undercover FBI agents and use of any non-official recording devices in courtroom during their testimony).

Further, using pseudonyms and protecting personal identifying information will not encumber the defense's case, as the inspectors are only testifying with regard to Defendant Salemme's alleged flight. No party has argued that the personal identifying information of the inspectors is necessary or relevant to their case. Under these circumstances, the limitations on revealing personal identifying information are no broader than necessary. Further, the same or similar measures have been approved in other cases. See, e.g., Mohamud at ECF Nos. 233, 341 (allowing undercover FBI agents to testify using a pseudonym); Hendricks, at ECF No. 84

5

(allowing undercover FBI agent to use a pseudonym); United States v. Dumeisi, No. 03-cr-00664 (N.D. Ill. Jan. 2, 2004), ECF Nos. 75, 83 (former member of Iraqi Intelligence Service allowed to testify using a pseudonym and could not be questioned about his current or former address); see also United States v. Maso, No. 07-10858, 2007 WL 3121986, at *4 (11th Cir. Oct. 26, 2007) (per curiam) (unpublished) ("The district court did not violate [the defendant's] right to confront witnesses by allowing the [undercover informant] to testify using a pseudonym."); United States v. Contreras, 602 F.2d 1237, 1239−40 (5th Cir. 1979) (where there was reasonable fear that disclosure of DEA agent's home address and frequented locations would endanger him and his family, no error in precluding cross-examination as to home address and other minor background information even though agent was "instrumental in defendant's arrest"); United States v. Palermo, 410 F.2d 468, 472 (7th Cir. 1969) ("[W]here there is a threat to the life of the witness, the right of the defendant to have the witness's true name, address, and place of employment is not absolute." (citing United States v. Varelli, 407 F.2d 735 (7th Cir. 1969))).

Third, the Court considered and is now adopting reasonable alternatives to completely closing the proceeding. The Government first proposed a partition between the public and the witnesses and then recommended moving the public to a parallel courtroom where the testimony would be broadcasted, both of which might have been appropriate here and were found proper in other cases. See, e.g., Mohamud, at ECF Nos. 233, 341 (adopting government's proposal to broadcast testimony of two undercover FBI agents to an adjacent courtroom for public viewing); Hendricks, at ECF No. 84 (allowing contemporaneous audio broadcast of undercover agent's testimony for the public seated in separate room); see also United States v. Lucas, 932 F.2d 1210, 1216–17 (8th Cir. 1991) (no abuse of discretion in allowing detective to testify from behind screen to prevent her from being seen by the public in the courtroom); United States v.

Ambrose, No. 07-cr-00018 (N.D. Ill. Apr. 7, 2009), ECF Nos. 105, 111 (ordering use of screen to protect identity of three government witnesses).

After the Defendants objected to installing a partition or moving the public to a parallel courtroom, because such measures could lead a jury to presume that Defendants were dangerous or otherwise impact the jury's view of the witnesses or their testimony, the Court held a hearing on the motion for reconsideration to explore other even less disruptive alternatives. At that hearing, counsel for Mr. Salemme proposed using makeup to disguise the identities of the inspectors. From Mr. Salemme's perspective, the use of makeup or light disguise would have less impact on the courtroom atmosphere and the right to a public trial and be less likely to imply that the Defendants themselves are dangerous. Although neither Defendant objected to the use of makeup, nor raised this particular concern, the Court recognizes that "[d]isguising the witness risks lessening the jury's opportunity to observe the witness's demeanor and assess credibility." Ayala, 131 F.3d at 71. Makeup, however, may allow the jury to have a clearer view of the witnesses' faces than would sunglasses or a hat. See Morales v. Artuz, 281 F.3d 55, 60–61 (2d Cir. 2002) (considering whether disguise using sunglasses violated defendant's right to confrontation but found "[t]he obscured view of the witness's eyes . . . resulted in only a minimal impairment of the jurors' opportunity to assess [the witness's] credibility"). Further, while at least one of the Defendants objected to the partition and the parallel courtroom, which would lessen the need for a disguise but have a greater potential impact on the juror's perception of the testimony, both Defendants agreed that makeup was an acceptable alternative.

For the foregoing reasons, and as discussed at the hearing on May 23, 2018, the Court orders that in addition to the limiting measures imposed by the Court's April 25 order, the inspectors may testify using makeup to hide their true identity. To protect the Defendants' right

to confrontation, the use of makeup should be no greater than necessary to hide the true identity of the inspectors, and should not be distracting to the jury or impose more than a minimal burden on the jury's ability to assess the demeanor of the witnesses. Although the Court does not necessarily intend to give the jury any instruction with regard to the inspectors' testimony or the imposition of these protective measures, the parties may submit proposed instructions for the Court's consideration.

**SO ORDERED.**

June 1, 2018                                              /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE